AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED

FEB 0 2 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.
Apple iPhone 6 Plus (A1524) Model: MGA92 )
IMEI: 355380071911298 )         **18MJ0485**
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-1, which is incorporated by reference.

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC § 952/960 | Importation of a controlled substance |

The application is based on these facts:
See Affidavit of Homeland Security Investigations Special Agent Michael Lesley, which is hereby inorporated by reference and made part hereof.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Michael Lesley, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/2/18

*Judge's signature*

City and state: San Diego, CA     William V. Gallo, Magistrate Judge
                                  *Printed name and title*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>One Apple iPhone 6 Plus (A1524)<br>Model: MGA92<br>IMEI: 355380071911298<br>Serial Number: F2LPQ2HWG5QR<br>MSISDN: +52 (664) 599 1591<br>ICCID: 8952020516612688171<br>IMSI: 334020391704354<br><br>One Samsung Galaxy A7 2017<br>Model: SM-A720F<br>IMEI: 355976082292188<br>ICCID: 8952020917510850964<br>IMSI: 334020402360495 | Case No.:<br><br>**AFFIDAVIT OF SPECIAL AGENT MICHAEL LESLEY IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT** |

I, Michael Lesley, Special Agent of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

//

//

//

//

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following items:

   a. One Apple iPhone 6 Plus (A1524)
      Model: MGA92
      IMEI: 355380071911298
      Serial Number: F2LPQ2HWG5QR
      MSISDN: +52 (664) 599 1591
      ICCID: 8952020516612688171
      IMSI: 334020391704354
      **(Target Device #1)**

   b. One Samsung Galaxy A7 2017
      Model: SM-A720F
      IMEI: 359976082292188
      ICCID: 8952020917510850964
      IMSI: 334020402360495
      **(Target Device #2)**

(collectively the **Target Devices**) as described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically, violations of Title 21, United States Code, Section(s) 952 and 960. This search supports an investigation and prosecution of Alma Elizabeth PARDINI-Leon (PARDINI) for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. On December 14, 2017, PARDINI attempted to enter the United States at the San Ysidro Port of Entry as the driver and sole occupant of a 2015 Suzuki Swift bearing Baja California license plates AKZ3826 ("Suzuki"). An examination of the Suzuki revealed seven (7) packages weighing approximately 9.16 kilograms (20.19 pounds) of a white powdery substance that field tested positive for the properties of cocaine, and three (3) packages weighing approximately 3.5 kilograms (7.71 pounds) of substance that field tested positive for the properties of heroin concealed inside the non-factory compartments in the rocker panels of the vehicle. Defendant was arrested

on December 14, 2017, and charged in a criminal complaint with Importation of a Controlled Substance, a felony, in violation of Title 21, United States Code Sections 952 and 960, Case No. 17MJ4770.

3. The **Target Devices** were seized on or about December 14, 2017, after Defendant's arrest at the San Ysidro Port of Entry, by HSI Special Agent Michael Lesley. The **Target Devices** are currently held as evidence at the CBP Evidence Vault located at 9495 Customhouse Plaza in San Diego, CA 92154.

4. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachments B-1 and B-2.

5. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

6. I am a Special Agent employed with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I have been so employed since April 2016. Prior to my employment with HSI, I was employed as a Border Patrol Agent with the United States Border Patrol from October 2009 until April 2016. In my current position with HSI, my duties include investigating the trafficking of federally controlled substances. During my experience in law enforcement, I have had training in investigating the unlawful importation, possession, and distribution of controlled substances. My experience includes many arrests, searches, and interviews. I have also worked and

consulted with many law enforcement officers experienced in narcotics smuggling investigations. Through my experience and training, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego International Ports of Entry.

7. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and to enforce provisions of the Federal Controlled Substance Act, pursuant to Title 21 of the United States Code. I have participated in criminal investigations involving, among other things, the illegal smuggling of narcotics into the United States, and I have received formal training in the laws and regulations relating to such investigations including 21 USC §§ 952 and 960, Importation of a Controlled Substance. My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics smugglers in the normal course of their illicit activities.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

  e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

  f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

  g. The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

  9. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

  10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a.  tending to indicate efforts to import cocaine, heroin, or some other federally controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, heroin, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, heroin, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d.  tending to identify travel to or presence at locations involved in the importation of cocaine, heroin, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

//

//

//

//

//

## FACTS SUPPORTING PROBABLE CAUSE

11. On December 14, 2017, at approximately 11:26 a.m., PARDINI applied for permission to enter into the United States from Mexico through the San Ysidro, California, Port of Entry (POE). PARDINI was the driver and sole occupant of a 2015 Suzuki Swift. She presented a facially valid SENTRI Card as proof of her identity and U.S. immigration status as a citizen of Mexico, B1/B2 Visa holder. PARDINI stated she was entering the United States to go to "downtown San Diego". PARDINI was referred to secondary inspection after a Customs and Border Protection Officer (CBPO) received a computer generated alert. CBPOs noticed anomalies during a Z-Portal X-ray examination of the Suzuki vehicle, and additionally received a positive alert notification to the vehicle during a screening utilizing a Narcotics Human Detector Dog. A subsequent inspection of the vehicle revealed two non-factory compartments in the rocker panels of the vehicle with 10 packages. Seven (7) of the packages field-tested positive for the properties of cocaine, with a combined weight of approximately 9.16 kilograms (20.19 pounds). Three (3) of the packages probed field tested positive for the properties of heroin, with a combined weight of approximately 3.50 kilograms (7.71 pounds). CBPOs also located a GPS tracking device in the Suzuki.

12. During her post-arrest interview, PARDINI stated that her ex-husband, Joel de Jesus Sanchez-Lopez, is the owner of the Suzuki. PARDINI stated there are two keys to the Suzuki: she has one key and Sanchez-Lopez has the other. PARDINI stated that Sanchez-Lopez last used the Suzuki to cross the border one week prior to her arrest, and that he was detained and later released on that occasion. PARDINI stated she owns a 2016 Toyota Hilux (Baja California plates/AP21939), but the Hilux is not enrolled in SENTRI. PARDINI stated that at the time of her arrest, she was on her way to class at the Church of Scientology in downtown San Diego.

13. PARDINI stated she lives in Tijuana and used the Suzuki to cross the border several times. PARDINI stated she has had the Suzuki since Monday, December 11, 2017. PARDINI stated SANCHEZ loaned her the Suzuki for the week because she

has classes at the Church of Scientology and her Toyota Hilux is not on the SENTRI account.  Subsequent records check revealed that PARDINI had crossed through the Otay Mesa and San Ysidro POE in the Toyota Hilux on at least twenty (20) previous occasions.  PARDINI stated she last crossed in the Toyota Hilux on Tuesday, December 12, 2017.

14.     PARDINI stated she had no idea how the drugs got into the car.  PARDINI stated she left the Suzuki the day before at a car wash for a couple of hours, and returned later to pick it up.  PARDINI stated sometimes "Gordito" goes to her house to wash her car.  When "Gordito" comes to wash the car, she leaves him with the keys to the car.  PARDINI stated that she spoke to "Gordito" that morning while he washed the car.

15.     During the course of the investigation, PARDINI positively identified two cell phones, an Apple iPhone 6 Plus and a Samsung Galaxy A7, that were seized from her at the time of arrest as belonging to her.  Both Target Devices were examined utilizing the Cellbrite data extraction, transfer, and analysis device on site.

16. Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe that the **Target Devices** were used to coordinate the importation of cocaine and heroin into the United States.  In addition, I know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Devices** may identify the persons involved in narcotics trafficking activities, including PARDINI.  Furthermore, it is likely the **Target Devices** may contain incriminating information pertaining to the smuggling event.  Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of PARDINI, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the

**Target Devices**.

17. Finally, I also know that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional experience, this requires planning and coordination in the weeks and often months prior to the event. This planning often includes coordination on crossing the border to develop a crossing history or pattern. A review of PARDINI's crossing records shows crossings in the 2015 Suzuki Swift vehicle that she used to conceal the cocaine and heroin. Systems checks reveal that PARDINI has crossed in the Suzuki ten (10) times (on February 10, April 30, May 19, June 26, September 27, November 19, December 3, December 6, December 7, and December 13) prior to her arrest on December 14, 2017. Four of the ten crossings were together with her ex-husband Sanchez-Lopez. PARDINI crossed the Suzuki as the driver and sole occupant on May 19, 2017. As noted previously, the cocaine and heroin packages were purposely concealed within the rocker panels of the vehicle. Given this, I respectfully request permission to search the **Target Devices** for items listed in Attachments B-1 and B-2 beginning on May 19, 2017, up to and including December 14, 2017.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started

in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the subject cellular/mobile telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

21. Based on all of the facts and circumstances described above, there is probable cause to conclude that the **Target Devices** were used to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

22. Because the **Target Devices** was seized during the investigation of PARDINI's smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by PARDINI continues to exist

on the **Target Devices**. As stated above, I believe that the date range for this search is from May 19, 2017, through December 14, 2017.

23. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 and A-2, and the seizure of items listed in Attachments B-1 and B-2, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Michael Lesley
Special Agent

Subscribed and sworn to before me this ___2___ day of February, 2018.

_____
The Honorable William V. Gallo
United States Magistrate Judge

# ATTACHMENT A-1

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> One Apple iPhone 6 Plus (A1524)
> Model: MGA92
> IMEI: 355380071911298
> Serial Number: F2LPQ2HWG5QR
> MSISDN: +52 (664) 599 1591
> ICCID: 8952020516612688171
> IMSI: 334020391704354
>
> **(Target Device #1)**

**Target Device #1** is currently held as evidence at the CBP Evidence Vault located at 9495 Customhouse Plaza in San Diego, CA 92154.

## **ATTACHMENT A-2**

PROPERTY TO BE SEARCHED

The following property is to be searched:

>One Samsung Galaxy A7 2017
>Model: SM-A720F
>IMEI: 355976082292188
>ICCID: 8952020917510850964
>IMSI: 334020402360495
>
>**(Target Device #2)**

**Target Device #2** is currently held as evidence at the CBP Evidence Vault located at 9495 Customhouse Plaza in San Diego, CA 92154.

## **ATTACHMENT B-1**
ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of May 19, 2017, up to and including December 14, 2017.

a. tending to indicate efforts to import cocaine, heroin, or some other federally controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, heroin, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, heroin, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine, heroin, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

## **ATTACHMENT B-2**
ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of May 19, 2017, up to and including December 14, 2017.

a.  tending to indicate efforts to import cocaine, heroin, or some other federally controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, heroin, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, heroin, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d.  tending to identify travel to or presence at locations involved in the importation of cocaine, heroin, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.